**UNITED STATES DISTRICT COURT WESTERN DISTRICT OF NORTH CAROLINA CHARLOTTE DIVISION**

FILED
CHARLOTTE, NC

**John Hanigosky,** Plaintiff, v. **Wilmington Health PLLC,** Defendant.
Civil Action No. 3:26-Cv-464- SCR

JUN 12 2026

**COMPLAINT AND JURY DEMAND**

US DISTRICT COURT
WESTERN DISTRICT OF NC

**I. NATURE OF THE ACTION** This action arises under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq. Plaintiff brings claims for disability discrimination and retaliation arising from Defendant's termination of his employment on August 13, 2025. Plaintiff seeks all available legal and equitable relief.

**II. JURISDICTION AND VENUE** This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States. Venue is proper in the Western District of North Carolina because Plaintiff resided and performed his work duties remotely from Mecklenburg County, North Carolina, and the effects of the challenged employment actions were experienced in this District. Plaintiff exhausted administrative remedies by filing EEOC Charge No. 430-2025-04359 and receiving a Notice of Right to Sue.

**III. PARTIES** Plaintiff John Hanigosky is a resident of Mecklenburg County, North Carolina. Defendant Wilmington Health PLLC is a North Carolina employer headquartered in Wilmington, North Carolina.

**IV. FACTUAL ALLEGATIONS**

1. Defendant hired Plaintiff as a Business Intelligence Analyst effective August 4, 2025.
2. Prior to being hired by Defendant, Plaintiff completed Defendant's application and onboarding process and voluntarily disclosed that he had a disability and/or a history or record of disability through Defendant's recruiting and human resources systems. Specifically, records maintained within Defendant's ADP recruitment system reflect the entry: "Yes, I have a disability, or have a history/record of having a disability".
3. On August 6, 2025, during Plaintiff's first substantive meeting with manager Jacque Webster, Webster stated unsolicited: "You don't have to be on camera, and you can go to your appointments". This statement occurred before Plaintiff had performed any supervised work, before any alleged performance concerns existed, and before Plaintiff requested any accommodation or scheduling flexibility.
4. Defendant later alleged that Plaintiff was disengaged or inattentive during orientation. Plaintiff denies those allegations and points out that attendance at the in-person orientation was expressly optional. Plaintiff proactively elected to attend in person despite living several hours away to demonstrate enthusiasm and engagement.

5. Furthermore, immediately following orientation, Manager Webster sent Plaintiff Microsoft Teams messages praising his work as "Awesome," "Perfect," and "Sweet!". Plaintiff alleges those contemporaneous actions and positive written feedback are directly inconsistent with Defendant's later post-hoc characterizations of his orientation behavior and performance. Defendant identified no contemporaneous disciplinary record, counseling record, or written complaint documenting such poor conduct.

6. Prior to Plaintiff's start date, Manager Webster explicitly authorized and encouraged Plaintiff to connect with Privacy Officer Megan Tharp to get oriented.

7. During orientation, Ms. Tharp served as a presenter and provided Plaintiff with her business card. Plaintiff subsequently contacted Ms. Tharp solely to complete the introductory connection initiated during orientation and authorized by his manager. No project work, reporting requests, deliverables, or data requests were discussed during that contact.

8. Plaintiff's contact with Ms. Tharp occurred before assignment of the OBGYN project, before any workflow restrictions were communicated, and before any instruction that all questions must go through Webster had been articulated. Defendant later characterized this contact as improper and falsely accused Plaintiff of going "behind his manager's back".

9. Plaintiff was assigned work relating to an OBGYN depression-screening initiative. Plaintiff completed SQL code updates, quality assurance review, and supporting documentation regarding the assigned project.

10. While Defendant later claimed this documentation was "incorrect and unnecessary," the official Business Intelligence Analyst job description explicitly lists "Create and maintain documentation of all processes" as an essential duty.

11. Webster explicitly instructed Plaintiff to submit code for review before creating a draft Power BI deliverable. Plaintiff followed those instructions perfectly. Plaintiff was terminated before code approval occurred and before any Power BI deliverable could be completed under the workflow established by Webster.

12. On August 13, 2025, Plaintiff informed Webster that he intended to escalate concerns regarding her conduct and false accusations to her manager. Immediately following this internal opposition, Defendant's own position statement acknowledges that Webster discussed exploring other employment opportunities to transfer Plaintiff within Wilmington Health.

13. At approximately 3:18 p.m. on August 13, 2025, Plaintiff forwarded materials to the EEOC and reported concerns regarding discrimination, retaliation, and the targeting conduct of Webster.

14. Shortly thereafter, Plaintiff participated in a termination call with Human Resources Director Jen Henson. During that call, Plaintiff reported that he believed Webster's accusations were false and that the termination was retaliatory.

15. During this same termination call, Director Henson attempted to pressure Plaintiff into resigning by suggesting "one or both parties deciding it's not a fit," demonstrating a lack of confidence in the termination cause. Plaintiff refused, and Defendant terminated Plaintiff's employment on August 13, 2025.

16. Plaintiff alleges that Defendant's explanations for the termination have varied significantly over time, establishing clear evidence of pretext. These shifting, contradictory explanations include:
    - An initial claim of vague "manager discretion" during the August 13 HR Call.
    - A claim that Plaintiff was "not following directions" in Manager Webster's August 13 email.
    - A claim of "incomplete work" (specifically regarding the Power BI deliverable) in Defendant's EEOC Position Statement.
    - A claim of poor "orientation behavior" (dozing off/rude) in Defendant's EEOC Position Statement.
17. Plaintiff alleges that these material inconsistencies and shifting explanations concerning disability disclosure, the Megan Tharp contact, Plaintiff's work performance, and the events immediately preceding termination support a strong inference that Defendant's stated reasons for termination were pretextual.

## COUNT I – ADA RETALIATION

18. Plaintiff incorporates by reference the preceding paragraphs.
19. Plaintiff engaged in protected activity by opposing conduct he reasonably believed to be discriminatory or retaliatory, reporting concerns to management, escalating concerns regarding Webster's conduct, communicating concerns to the EEOC, and reporting retaliation concerns to Human Resources.
20. Defendant was aware of Plaintiff's opposition to the conduct at issue.
21. Defendant subjected Plaintiff to an adverse employment action by terminating his employment.
22. The extreme, close temporal proximity between Plaintiff's protected activity— including his 3:18 p.m. email to the EEOC and his stated intent to escalate his manager's conduct—and his termination approximately one hour later supports an undeniable inference of retaliatory motive.
23. Defendant's actions violated the ADA's anti-retaliation provisions.

## COUNT II – ADA DISABILITY DISCRIMINATION

24. Plaintiff incorporates by reference the preceding paragraphs.
25. Plaintiff is an individual with a disability within the meaning of the ADA and/or had a record of disability and/or was regarded as having a disability.
26. Plaintiff was qualified to perform the essential functions of the Business Intelligence Analyst position.
27. Defendant terminated Plaintiff's employment.
28. Plaintiff alleges that the termination occurred under circumstances giving rise to an inference of disability discrimination, including Defendant's constructive knowledge of Plaintiff's disability disclosure in its ADP system, the unsolicited August 6 "appointments" comment by Manager Webster, and Defendant's subsequent hostility and conduct.
29. Defendant's actions violated the ADA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment in favor of Plaintiff;
B. Award back pay;
C. Award front pay and/or reinstatement as appropriate;
D. Award compensatory damages;
E. Award punitive damages to the extent permitted by law;
F. Award costs and recoverable fees as permitted by law;
G. Award pre-judgment and post-judgment interest; and
H. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,
John Hanigosky
3429 Tappan Place Charlotte, NC 28205
(330) 787-6433 [johnhanigosky@gmail.com]
Pro Se Plaintiff Date: June 11, 2026